**Joyce Somloc LEMKE, Appellant,**

v.

**Jacob Eugene LEMKE, Appellee.**

**No. 2–95–267–CV.**

Court of Appeals of Texas,
Fort Worth.

Sept. 12, 1996.

Rehearing Overruled Oct. 10, 1996.

---

James L. Robertson, Arlington, for Appellant.

Loe, Warren, Rosenfield, Kaitcer & Hibbs, P.C., Mark J. Rosenfield, Mike Windsor, Fort Worth, for Appellee.

Before CAYCE, C.J., and DAY and DAUPHINOT, JJ.

## OPINION

CAYCE, Chief Justice.

This is an appeal from only that portion of a divorce proceeding that awarded the funds in a spendthrift trust to appellee Jacob Eugene Lemke as his separate property. In five points of error, appellant Joyce Somloc Lemke complains that 1) the trial court erred in ruling that the trust assets are Jacob's separate property; 2) there is no evidence to support the trial court's disproportionate award of all the community property interest in the trust to Jacob; 3) there is no evidence to support the trial court's finding that even if the trust assets were not in a trust, there would be no community property left to divide; 4) the trial court erred in quashing the depositions of two attorneys; and 5) the trial court erred in refusing to allow the trust to be joined as a party to the divorce proceedings. We overrule all points of error and affirm the judgment.

Jacob and Joyce were married on March 12, 1994. Seven months later, they separated, and their divorce was finalized on June 26, 1995. At least four years before the marriage, Jacob received a large sum of money from the settlement of a medical malpractice lawsuit brought as a result of brain damage suffered by him. On October 3, 1990, Jacob, acting alone as grantor, created the Jacob Eugene Lemke Trust with himself as the sole beneficiary and Cynthia Kimberling as trustee. The trust instrument provides that the trustee has the sole discretion to distribute as much of the trust income and corpus as the trustee deems appropriate for Jacob's health, education, maintenance, and welfare needs.

At trial, Jacob presented the testimony of Ronald Vickers, Jr., an investment consultant who oversees the financial management of the trust. Vickers explained that the trust is composed of essentially four investment vehicles—one money market checking account that is used to pay bills and make distributions from the trust, one account that invests primarily in stocks, one account that invests primarily in municipal bonds, and one account that invests in both stocks and bonds. Vickers admitted that he could not trace any particular stock or bond to determine how much of its purchase price came from dividends, stock splits, or ordinary interest. However, he was able to show that during the time of the marriage, the trust generated income in the total amount of .$104,966.35, and the total amount distributed during the marriage was $168,416.00. According to Vickers's testimony, the funds distributed to Jacob were used to pay for trust expenses and for Jacob's and Joyce's living expenses.

Joyce's position throughout the divorce proceedings was that the trust was invalid because Jacob lacked the capacity to create the trust. She alleged that the assets in the trust were subject to her community property claims under the Texas Trust Code, which provides that a grantor may not defeat the claims of his creditors by creating a spendthrift trust of which he is a beneficiary. See TEX.PROP.CODE § 112.035(d) (Vernon 1995) (the "Texas Trust Code"). After hearing evidence from both sides, the trial court divided the real and personal property in the community estate and ordered that "the 'Jacob Eugene Lemke Trust', including all of its assets, corpus, income, proceeds and benefits is and shall be confirmed as the sole and separate property of Petitioner, JACOB EUGENE LEMKE."

In her first and second points of error, Joyce challenges the court's finding that all of the assets in the trust are Jacob's separate property. According to Joyce, because Jacob did not trace precisely which of the stocks and bonds in the trust were purchased with interest income from the trust and which were purchased with corpus or principal funds, he has not sufficiently rebutted the presumption that the entire trust is community property. See TEX.FAM.CODE ANN. § 5.02 (Vernon 1993).

The leading case in this area is *In re Marriage of Burns*, 573 S.W.2d 555 (Tex.Civ. App.—Texarkana 1978, writ dism'd). In *Burns*, the husband was the beneficiary of six trusts at the time of the divorce. Five of the trusts were created before the marriage, and the sixth was created and funded by Mr. Burns early in the marriage with money admittedly his separate property, and the wife conceded that the corpus of the trusts was Mr. Burns's separate property. Three of the trusts were spendthrift trusts, the assets of which "were not subject to alienation, attachment or assignment by Mr. Burns or his creditors." *Id.* at 556. Five were also "discretionary trusts" in that the trustee "could either withhold or distribute the income and/or corpus at [the trustee's] sole discretion." *Id.* at 557. The sixth trust did not provide for either discretionary or periodic distribution, but rather directed that the corpus and accumulated income be distributed to Mr. Burns at a specific later date. Mr. Burns was not the trustee of any of his trusts. *Id.*

■ In *Burns*, as in this case, there was no suggestion that the trusts were created, funded, or operated in fraud of the wife or as an alter ego of the husband. The issue before the court, therefore, was whether the undistributed income earned by the trusts during the marriage was community property. Focusing on section 5.01(b),[1] the court held that the trust income had not been acquired by either spouse during marriage.

> By definition, the undistributed trust and estate income had not been distributed to Mr. Burns nor did he have a present or past right to require its distribution so as to compel a finding that there was a constructive acquisition. The income was actually acquired by the trusts and estates and not by either Mr. or Mrs. Burns. As stated, there was no constructive acquisition. Since neither spouse actually or constructively acquired the undistributed trust and estate income during the marriage, such income, though earned during the

marriage, remained a part of the respective trust or estate and was not subject to division by the court. Such income was not community property.

*Id.* at 557–58.

In the instant case, the trust contained a spendthrift clause, which prevented Jacob from alienating, anticipating, assigning, encumbering, or hypothecating his interest in the principal or income of the trust. The trustee of Jacob's trust had the absolute discretion to distribute as much of the corpus and income of the trust as she deemed appropriate for Jacob's health, education, maintenance, and welfare needs. Following *Burns*, we hold that the undistributed trust income that accrued during Jacob's marriage to Joyce remained a part of the separate trust estate and was not subject to division by the court because it was not community property. Points of error one and two are overruled.

■ We also hold that Joyce has no standing to challenge the validity of the trust. Under the Property Code, only an "interested person" may bring an action concerning a trust. TEX.PROP.CODE ANN. § 115.011(a) (Vernon 1995). Section 111.004(7) defines an "interested person" as a "trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust." *Id.* § 111.004(7) (Vernon Supp.1996). It is undisputed that Joyce is neither the trustee nor a beneficiary of Jacob's trust. Moreover, she has absolutely no claim or interest against the trust and is not affected by its administration in any way. The trust document expressly provides that upon Jacob's death, any undistributed principal and accrued income will be paid in equal shares to the survivors among his parents and brother, and if there were no survivors, to his "descendants per stirpes." Thus, she does not stand to inherit any of the trust assets upon Jacob's death. *See Davis v. Davis*, 734 S.W.2d 707, 709–10 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Nor does she

---

1. Section 5.01(b) provides:

    (b) Community property consists of the property, other than separate property, *acquired by* either spouse during marriage.

TEX.FAM.CODE ANN. § 5.01(b) (Vernon 1993) (emphasis supplied).

have any community property interest in the trust because we have already determined that the corpus and remaining income in the trust are Jacob's separate property. Point of error three is overruled.

■ Joyce asserts in point of error four that the trial court erred in quashing the depositions of Kelcie Hibbs and Richard Haskell. Hibbs was allegedly the attorney who drafted the trust for Jacob, and Haskell was the guardian ad litem appointed for Jacob during the medical malpractice action. The only information Joyce sought from these witnesses was testimony concerning Jacob's mental capacity at the time he created the trust, which goes to the validity of the trust. Having determined that Joyce lacks standing to challenge the validity of the trust, we find that any testimony relating to Jacob's mental capacity at the time of the formation of the trust is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. *See* TEX.R.CIV.P. 166b(2)(a). Point of error four is overruled.

■ In point of error five, Joyce contends that she should have been allowed to join the trust in the divorce proceedings as an "indispensable party." *See* TEX.R.CIV.P. 39. This rule provides that a person shall be joined as a party to an action if "in his absence complete relief cannot be accorded among those already parties." TEX.R.CIV.P. 39(a). As stated above, Joyce has no claims to or interest in the assets in the trust. Thus, Jacob and Joyce were accorded complete relief without the joinder of the trust as a party to their divorce proceedings. Point of error five is overruled.

The judgment below is affirmed.