Herbert D. LIPSEY, Appellant,

v.

Lorayne L. LIPSEY, Appellee.

No. 2–98–090–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 28, 1998.

Lively & Padfield, L.L.P., John R. Lively, Fort Worth, for Appellant.

Auld & Stephenson, James A. Stephenson and Donald J. Cosby, Bedford, for Appellee.

Before LIVINGSTON, DAUPHINOT and HOLMAN, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

In a single point, Herbert Lipsey challenges the trial court's characterization of undistributed income in a retirement trust created prior to marriage as community property and its subsequent division. Because the retirement trust is controlled by ERISA, we are asked to decide whether ERISA confers a community property or other beneficial interest to a non-participating spouse solely by reason of marriage. We find that it does not and reverse the trial court's judgment.

## BACKGROUND

Herbert was married to Joyce Lipsey from October 1951, until her death in September 1994. Herbert began working for American Airlines in October 1955 and remained employed there until his retirement in December 1992. At Herbert's retirement, he "rolled-over" his pension plan into the American Airlines 401(k) Capital Accumulation Plan (the "Plan") and deferred receipt of any distributions or benefits until he reached age 70½. The Plan is held and managed as a trust, with NationsBank serving as the trustee, and complies with the Employee Retirement Income Security Act ("ERISA").[1] Herbert made no withdrawals or distributions from the trust since its creation.

In October 1995, after Joyce's death, Herbert married Lorayne Lipsey. Lorayne, an Oklahoma resident, sold her home and invested the proceeds from the sale in an annuity prior to the marriage. After almost a year, Lorayne filed for divorce in September 1996. At trial, the court found the corpus of the Plan and the annuity to be Herbert's and Lorayne's separate property, respectively. However, the court found that the $238,446.60 increase in the Plan's value, and the $30,212.96 increase in Lorayne's annuity, all of which occurred during the parties' 11–month marriage, belonged to the community. As part of its division of the marital estate and to equalize the division of community property between the parties, the court awarded Lorayne the entire increase in value of her annuity and $95,000 of the Plan's increase.

Herbert only appeals from the trial court's characterization of the Plan's income as community property and the court's award of $95,000 from that income. Relying on this court's decision in *Lemke v. Lemke*, 929 S.W.2d 662, 664 (Tex.App.—Fort Worth 1996, writ denied), he argues that the undistributed Plan income is not community property and is not subject to the trial court's just and right division of the marital estate. *See id.* (citing *In re Marriage of Burns*, 573 S.W.2d 555, 557–58 (Tex.Civ.App.—Texarkana 1978, writ dism'd)). As part of Herbert's argument, he challenges the court's findings of facts and conclusions of law characterizing the Plan's increase in value as community property.

Lorayne does not assert that the Plan was established, funded, or operated in fraud of her rights, nor does she allege that the trust was the alter ego of Herbert. Furthermore,

1. *See* 29 U.S.C. §§ 1001–1461 (1994 & Supp. 1998).

she does not dispute that NationsBank, and not Herbert, is the Plan trustee and that Herbert has no right to withdraw funds until he reaches age 70½.[2]

Instead, she argues that because the Plan is subject to ERISA, and the trust in *Lemke* was not, *Lemke* is inapplicable. She contends that ERISA vests her, the nonparticipating spouse, with a beneficial interest in the Plan.

## DISCUSSION

Lorayne's contention is that when she married Herbert, ERISA automatically deemed her Herbert's Plan beneficiary, and as such, she had a cognizable interest in the Plan during their marriage. Consequently, as a beneficiary, any increase in the Plan's value during their marriage is subject to the trial court's just and right division of the marital estate. Lorayne's argument is based on ERISA's definitions and Texas case law that holds trust beneficiaries are the real owners of trust property. The Plan defines "Beneficiary" as any person designated, in accordance with its provisions and those in section 401(a)(9) of the Internal Revenue Code, to receive benefits upon the death of the participating spouse. The Plan mandates that if the participant is married to a "qualified spouse" at the date of death, the beneficiary *shall* be the qualified spouse. The Plan defines "Qualified Spouse" as "the spouse of a Participant ... as of any date on which a determination is being made for the purposes of the Plan." Finally, to complete her argument that the property is subject to division, she cites Texas case law that holds trust beneficiaries are the real owners of trust property.

Lorayne further asserts that because the Plan acknowledges the rights of a former spouse to the Plan's funds through a Qualified Domestic Relations Order ("QDRO"), the use of a QDRO is the equivalent to a distribution. In other words, she reasons that when a QDRO is used, Plan assets are distributed to the alternate payee regardless of whether the participating spouse is entitled to distribution. Consequently, she argues that she has acquired a right in the Plan regardless of whether actual distribution has occurred. Finally, she asserts that standing alone, § 1056(d)(3)(A)—the QDRO provision—gives her an interest in the Plan.

The seminal decision defining the intersection of state community property law and ERISA is *Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). In *Boggs*, the United States Supreme Court held that a testamentary gift based on Louisiana community property law was preempted by ERISA. *See id.* at ——, 117 S.Ct. at 1760–61. There, a non-participating spouse, the wife, died prior to the participating spouse's retirement. In her will, she divided her entire estate, which included a portion of her husband's employee retirement benefits, among her three children. *See id.* at ——, 117 S.Ct. at 1758.

Her husband then married Sandra and subsequently retired. *See id.*, 117 S.Ct. at 1758. At his death, he was survived by his three children and Sandra. *See id.*, 117 S.Ct. at 1758. Based on their mother's testamentary gift, the children sued Sandra seeking a portion of both her survivor's annuity and benefits paid out during the husband's retirement. Under Louisiana community property law, the children were entitled to receive their mother's one half community property interest at their father's death. *See id.*, 117 S.Ct. at 1758. Sandra contested the claim and asserted a claim for all the benefits based on § 1055 of ERISA. *See id.*, 117 S.Ct. at 1758.

The Court held that § 1055 mandated that every covered plan provide a surviving spouse's annuity. *See id.* at ——, 117 S.Ct. at 1761. Furthermore, the Court held that the survivor's annuity could not be alienated without the consent of the surviving spouse, and Sandra had not done so. *See id.*, 117 S.Ct. at 1761. Additionally, the Court disallowed the children's claim to the benefits

---

**2.** There is evidence that Herbert had some control over the Plan's management. Herbert is allowed to borrow from the Plan and he may dictate the type, but not the specific purchase of investment options. In other words, Herbert may chose a long-term growth—low-risk investment option, compared to a high-return—high-risk option. Regardless of the power he may exercise, he is prohibited from receiving or compelling distribution of Plan income.

paid out during Issac's retirement based on ERISA's purpose and structure. *See id.* at ———, 117 S.Ct. at 1762–67.

In *Boggs,* the Court considered the competing claims of a non-participating surviving spouse and those of children from a prior marriage. By definition, Lorayne is not a surviving spouse because Herbert is not dead. Here, we must consider the claims between a participating and a non-participating spouse. While *Boggs* is ultimately inapposite, it is instructive.

In its discussion of Sandra's right to the benefits paid out during retirement, the Supreme Court instructs that ERISA's primary purpose is to provide comprehensive protection for employees and their beneficiaries in employee benefit plans. *See id.* at ———, 117 S.Ct. at 1762 (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983)). Absent limited statutory exceptions, assets are "held for the *exclusive purposes* of providing benefits to participants in the plan and their beneficiaries." *See id.* at ———, 117 S.Ct. at 1763 (citing § 1103(c)(1)) (emphasis added).

█ Likewise, the Court instructs that "ERISA confers beneficiary status on a non-participating spouse ... in only narrow circumstances delineated by its provisions." *Id.* at ———, 117 S.Ct. at 1763. Section 1056, the QDRO provision, and § 1055, the surviving spouse annuity provision, define the scope of a non-participant spouse's community property interest in ERISA governed plans. *See id.* at ———, 117 S.Ct. at 1765. ERISA *does not* otherwise confer beneficiary status on a non-participating spouse by reason of their marital status. *See id.* at ———, 117 S.Ct. at 1763. Thus, one provision controls a non-participating spouse's community property interest at death and the other during life. Lorayne must satisfy the statutory requirements of either § 1055 or § 1056 to qualify as a Plan beneficiary. Because Herbert, the plan participant, is living, Lorayne can not meet the survivorship requirement of § 1055; therefore, she is not a beneficiary under that provision.

**3.** These exceptions are § 1056(d)(2) and (d)(3)(A). Only the exception in § 1056(d)(3)(A)

█ We are left with the second part of Lorayne's claim; whether § 1056 vests her with a beneficial interest. A brief overview is a necessary backdrop to our discussion of this claim. As part of its design to ensure that benefits are available when participants and beneficiaries expect them, ERISA contains a mandatory anti-alienation provision with only two narrow exceptions.[3] *See id.* at ———, 117 S.Ct. at 1765. Section 1056 subsection (d)(1) states, "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

However, realizing the possible conflict with the domestic relations laws of the states, Congress tempered the anti-alienation provision in paragraph (3)(A). *See id.* at ———, 117 S.Ct. at 1764. That paragraph states:

Paragraph (1) [referring to § 1056(d)(1)] shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

*Id.* § 1056(d)(3)(A).

Thus, while § 1056(d)(3)(A) specifically proscribes alienation of benefits by domestic relations orders, it creates an exception providing that benefits may be assigned or alienated by a domestic relations order if, and only if, the domestic relations order qualifies as a QDRO under §§ 1056(d)(3)(C)–(E). *See id.*

Thus, a QDRO is a statutorily sanctioned domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits with respect to a participant under a plan. *See Boggs,* 520 U.S. at ———, 117 S.Ct. at 1763. It is a

is applicable to this decision.

mechanism that classifies an alternate payee, such as a spouse or former spouse, as a plan beneficiary thereby allowing Congress to provide the intended pension protection, yet provide the states with a device to implement their domestic relations laws. *See* 29 U.S.C. §§ 1056(d)(3)(J), (K). As such, it does not confer a right to a non-participating spouse, but simply allows for enforcement of an existing right that arises under the domestic relations laws of a state.

It is axiomatic that a QDRO must first be a domestic relations order. ERISA defines a domestic relations order as:

> any judgment, decree, or order (including approval of a property settlement agreement) which—
>
> **(I)** relates to the provision of child support, alimony payments, or marital property rights of a spouse, former spouse, child, or other dependant of a participant, and
>
> **(II)** *is made pursuant to a State domestic relations law (including a community property law).*

*Id.* § 1056(d)(3)(B)(ii) (emphasis added).

Notwithstanding the fact that ERISA governs the Plan, based on these facts, resolution of this case is governed solely by the state's community property law. Therefore, unless community property law principles characterize the increase in value as community property, Lorayne has no interest in the property.

■ In a Texas divorce proceeding, the trial court, shall order a just and right division of the parties' estate. *See* former TEX. FAM.CODE ANN. § 3.63.[4] The trial court has wide discretion in the division of marital property and its decision will not be disturbed unless it is shown the court has clearly abused its discretion. *See Jacobs v. Jacobs,* 687 S.W.2d 731, 733 (Tex.1985); *Robles v. Robles,* 965 S.W.2d 605, 613 (Tex.App.—

Houston [1 st Dist.] 1998, no pet.). However, only community property may be divided and a court may not divest a party of his or her separate property. *See Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 141–42 (Tex.1977); *Robles,* 965 S.W.2d at 614.

■ We may only set a finding aside if it is so against the great weight and preponderance of the evidence such that it is manifestly unjust. *See Robles,* 965 S.W.2d at 615. Similarly, conclusions drawn from the facts may be reviewed to determine their correctness. *See id.*

■ Marital property is either separate or community property. *See* former TEX. FAM.CODE ANN. § 5.01. Whether property is separate or community is determined by the facts that, according to the rules of law, give the property its character. *See Robles,* 965 S.W.2d at 615. "Community property consists of the property, other than separate property, *acquired* by either spouse during marriage." *Id.* § 5.01(b). Furthermore, when separate property produces income and that income is acquired by a spouse, it is community property. *See Bakken v. Bakken,* 503 S.W.2d 315, 317–18 (Tex.Civ.App.— Dallas 1973, no writ). However, an increase in the value of an item of separate property is an inherent part of the item and cannot be separated from it. *See Allard v. Frech,* 754 S.W.2d 111, 114 (Tex.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *Maben v. Maben,* 574 S.W.2d 229, 232 (Tex.Civ.App.—Fort Worth 1978, no writ).

■ The evidence establishes that Herbert was the sole Plan beneficiary with his children designated as his surviving beneficiaries.[5] Herbert created the Plan with his separate property prior to his marriage to Lorayne.[6] He received no distributions from

---

**4.** Section 1 of Acts 1997, 75 th Leg., ch. 7 reenacted Title 1 of the Family Code, effective April 17, 1997. Section 3 of said Act repealed Title 1 of the Family Code, as that Title existed before the effective date of the Act. Because the petition for divorce was filed September 20, 1996, all citations are to the former provisions.

**5.** Because the issue is not before us, we will not decide ERISA's effect on his designation of his

children as surviving beneficiaries, rather than his spouse.

**6.** Separate property is that owned or claimed by a spouse prior to marriage. *See* former TEX. FAM.CODE ANN. § 3.63. The trial court found that $1,307,080.01, which represents all monies in the Plan at the time of marriage was Herbert's separate property. Lorayne did not contest this finding.

the Plan at any time during his marriage to Lorayne. By definition, the undistributed Plan income had not been distributed to Herbert, and during the marriage he had no right to compel such a distribution; therefore, he had not *acquired* the property. *See Lemke,* 929 S.W.2d at 664. Since Herbert did not actually acquire the undistributed Plan income during the marriage, such income, though earned during the marriage, remained a part of the trust estate and is not subject to division by the trial court. *See id.* Furthermore, undistributed income to which the beneficiary has no right to compel distribution is not community property. *See id.; In re Marriage of Burns,* 573 S.W.2d at 557–58.

As noted in *Boggs,* questions regarding the scope of ERISA's provisions and its preemptive effect on state law are enormously complex and difficult questions. Understandably, in the absence of clear authority, we recognize the difficulty courts and litigants face in ERISA's application. However, based on ERISA's provisions and existing Supreme Court guidance, we hold that absent an existing community property right, ERISA's QDRO provision does not create a community property interest. Therefore, we hold the court's finding of fact 4(k) that fails to list the $238,446.60 increase in value among appellant's separate property, and finding of fact 4(*l*) that characterizes the $238,446.60 Plan increase in value as community property are against the great weight of the evidence. Furthermore, we hold the court's conclusions of law number 6, that fails to characterizes the $238,446.60 increase in value as appellant's separate property, conclusion of law number 8 that specifically characterizes the $238,446.60 increase as community, and number 10 which awards Lorayne $95,000 of that increase, erroneous. In summary, we hold that the trial court erred in determining that the plan increase of $238,446.60 was community property subject to division on divorce, and therefore, abused its discretion in its division of property.

7. An individual may transfer property to another person as trustee for the benefit of the *transferor* or a third person; thus, a person can establish a

## CONSTRUCTIVE ACQUISITION

■ Lorayne also contends that although Herbert did not actually acquire the income, he has constructively done so. She argues that in both *Lemke* and *Burns,* the courts made specific findings that no past right to require distribution of funds existed, and, based on those findings, the respective courts found that the spouses had not constructively acquired the income. *See Lemke,* 929 S.W.2d at 664; *In re Marriage of Burns,* 573 S.W.2d at 557. Implicit in her argument is that *any* finding of a past right to distribution is constructive acquisition. Therefore, she argues when Herbert retired in 1992 and converted his pension to the Plan, rather than compelling distribution of his pension fund, he constructively acquired those funds. Furthermore, she reasons because Herbert was in constructive possession of those funds, any income generated during their marriage is community property.

We find Lorayne's argument unpersuasive. In *Lemke* and *Burns,* the courts' discussion that there had been no prior right to require distribution is with respect to trust income and not trust corpus. To accept Lorayne's argument would require us to hold that all income from self-settled trusts,[7] whether created before or after marriage, is community property. We decline to do so. Absent fraud, a spouse may create a trust from separate property, and so long as the income remains undistributed during marriage and there is no right to compel distribution, the income is not acquired during marriage and remains separate trust property. *See In re Marriage of Burns,* 573 S.W.2d at 557–58 (finding that income from a trust created *after* marriage with separate property and in which the husband had not acquired the income, separate property).

## CONCLUSION

Because ERISA does not confer beneficiary status on Lorayne, the Plan remains separate trust property and any division by the trial court is error. The trial court's judg-

trust for his own benefit. *See* Tex. Prop.Code Ann. § 112.001 (Vernon 1995).

ment dividing the parties' property is reversed and remanded to the trial court for a just and right division consistent with this opinion.