**Robert SUTTON, Appellant,**

v.

**Sharon EDDY, Appellee.**

**No. 04–91–00070–CV.**

Court of Appeals of Texas,
San Antonio.

Nov. 27, 1991.

Rodolfo R. Munoz, San Antonio, for appellant.

Becky R. Rainey, Asst. Crim. Dist. Atty., Forfeiture Section, San Antonio, Tod L. Adamson, Asst. Atty. Gen., Child Support Enforcement Div., Austin, for appellee.

Before BUTTS, BIERY and CARR, JJ.

## OPINION

BIERY, Justice.

This appeal by Robert Sutton is from a trial court order imposing sanctions against him for failure to submit to DNA paternity testing, arising out of a Revised Uniform Reciprocal Enforcement of Support Act (RURESA) paternity action brought by the Office of the Attorney General of Texas on behalf of the State of Massachusetts and Sharon Eddy.

In this paternity action, brought under chapter 21 of the Texas Family Code, Sharon Eddy sought to establish that Robert Sutton was the father of her son, D— A— E—.[1] In his original answer, Sutton generally denied Eddy's allegations and urged that her claims were barred by the applicable statute of limitations and by the doctrine of laches. An agreed order for blood tests was entered into by the parties in April 1988, pursuant to the provisions of TEX.FAM.CODE ANN. § 13.02 (Vernon 1986) and § 21.27 (Vernon Supp.1991), and TEX.R.CIV.P. 167a. At the time this agreed order was entered, only HLA blood testing was ordered.[2]

---

1. In order to protect the identity of the minor child, we refer to him in this opinion by his initials only.

2. Section 13.02 of the Texas Family Code was amended effective September 1, 1989. The amendment of this section, entitled "Pretrial Proceedings: Tests," enlarged the potential scope for testing beyond blood alone, to permit

In a subsequent amended answer filed on March 21, 1990, Sutton re-urged his affirmative defenses based on limitations and laches and specifically denied that he was the father of the child or that the child was entitled to any support from him. The case was set for trial on the non-jury docket on April 24, 1990. The case did not go to trial at that time, for reasons which are not clear from the record.

On June 8, 1990, a pretrial conference was convened before the court master, who admitted into evidence on behalf of Eddy the verified blood test report of George C. Maha, Ph.D., Associate Director of the Department of Paternity Evaluation of Roche Biomedical Laboratories. The report reflected a 95.26 percent power of exclusion and a 99.44 percent probability of Sutton's paternity of D__ A__ E__. The court thereupon shifted the burden of proof to Sutton, set temporary support at $75 semi-monthly, ordered income withholding, and set the case for trial on November 5, 1990.

Sutton appealed these orders to the referring 73rd District Court. On June 26, 1990, the district court heard the appeal and adopted the Master's Report and Recommendation. It is significant that there is no statement of facts from the hearings of June 8 or June 26, 1990.

On September 14, 1990, the State on behalf of Eddy filed a motion for DNA testing, which was set for hearing before the master on September 24, 1990. Prior to the hearing, Sutton filed the written deposition of his blood test expert, Burgess J.A. Cooke, as well as a Motion for Reconsideration and Further Objections to Evidence Tendered. It is unclear whether Sutton ever requested a hearing on this motion.

At the hearing on September 24, 1990, the court master ordered a second paternity test, which required DNA testing. This was ordered in part because Sutton had alleged that in the previous blood testing procedure, the expert had failed to consider that Sutton and Eddy were first cousins, and also because DNA paternity testing had been approved in the interim for blood, body fluid and tissue sampling by an amendment to the Texas Family Code.[3] Thereafter, Sutton appealed the court master's recommendation to the referring district court, which, on October 24, 1990, affirmed and adopted the master's recommendation for DNA testing with the specific order that the court's paternity testing expert, Gene Screen, Inc., was to consider the fact that the parties were first cousins. It is significant that there is also no statement of facts from either the September 24 or October 24, 1990 hearings.

Sutton refused to submit to the court-ordered paternity testing[4] on October 29, 1990, as ordered by the court, and Eddy filed a Motion for Sanctions to Compel Discovery against him, under Rules 167a and 215, TEX.R.CIV.P. and TEX.FAM.CODE

examination of body fluid and tissue samples as well. The most widely-accepted test of blood, body fluid and tissue samples in use today involves a comparison of genetic material, specifically deoxyribonucleic acid (DNA) samples, from the child whose paternity is at issue and from the alleged parents.

For a discussion of the pre-amendment evolution of blood testing in paternity actions, see Butts & Schwartz, Serologic Testing in Disputed Parentage Cases, 48 TEX.B.J. 754 (1985).

3. It was urged by Eddy, without rebuttal from Sutton, that the DNA test results could only be skewed if Sutton had an identical twin, who had also had sexual intercourse with Eddy during the period of conception. There has been no evidence offered that this was the case.

4. In a letter to the assistant attorney general representing Eddy, Sutton's attorney on October 25, 1990, wrote in part:

As I promised, I must advise you that my client feels that he has already fully performed all that is necessary of him under the law. We wanted to give the scientific methods an opportunity to clarify the situation but the results have instead only been cause of doubt as to whether your experts can do anything right. With all due respect—there is now serious doubt that so called "experts" can clarify the issues on the facts extant in this suit.

My client therefore respectfully submits that he has already complied with the law and there is no good reason evident to him as to why he must do more.

Eddy's motion for sanctions to compel discovery and for contempt was thereafter filed on October 31, 1990.

ANN. § 13.02 (Vernon Supp.1991), and for contempt against him, pursuant to TEX. FAM.CODE ANN. § 13.02(b) (Vernon Supp.1991). This motion was heard on November 16, 1990, and the Order Granting Motion for Sanctions was signed on November 27, 1990, which provided in part that "[Sutton's] answer and all other defensive pleadings on file be stricken, and default judgment entered upon final hearing"; that paternity of the child at issue be established upon final hearing; and that Sutton "is not allowed to support his defense of non-paternity, and [is] barred from offering any evidence on said defense." Following a final hearing on December 17, 1990, an Order to Establish Parent–Child Relationship was signed by the trial court which established Sutton as the father of the child and set forth certain support obligations which have not been specifically challenged in this appeal. It is also significant that Sutton did not appear at the final hearing, and the making of a record of the proceedings was waived.

Sutton brings eleven points of error in this appeal, in which he contends that the trial court erred:

(1) in admitting the Roche Report into evidence pursuant to section 13.04 of the Texas Family Code, when it was not in compliance therewith;

(2) in failing to follow the limitation of section 13.04(d) that the Roche Report be admissible at pretrial only "as evidence of the truth of the matters it contains";

(3) in depriving Sutton of his right to trial by jury by making its own determination that "unrelated man of the North American Caucasian population" meant something other than the meaning conveyed thereby;

(4) in dispensing with the section 13.04(f) requirements that the court find that (1) the respondent is not excluded as the biological father of the child; and (2) at least 95 percent of the male population is excluded from being the biological father of the child;

(5) in refusing to return the burden of proof to Eddy after admission and consideration of Sutton's expert testimony;

(6) in refusing to return the burden of producing evidence to Eddy after admission and consideration of Sutton's expert testimony;

(7) in refusing to require the State's prior establishment of a prima facie case before rendering a default judgment or other sanctions pursuant to section 13.03 of the Texas Family Code;

(8) in finding the section 13.04(f) two required fact findings without the presence of any evidence in the record in support thereof;

(9) in finding the section 13.04(f) two required fact findings based on insufficient evidence therefore [sic];

(10) in failing to insist that the State prove its allegations as noticed on Sutton; and

(11) by abusing its discretion in sanctioning and rendering default judgment against Sutton.

It should be noted that the only evidentiary record before this court is a statement of facts from the hearing on the State's motion for sanctions to compel discovery and for contempt, and a supplement of exhibits from the hearing on June 26, 1990.

██ An appellate court may reverse a trial court for abuse of discretion only if, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable. *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649, 651 (Tex.1970). Therefore, the party that complains of abuse of discretion has the burden to bring forth a record showing such abuse. *See Englander Co. v. Kennedy,* 428 S.W.2d 806, 807 (Tex.1968); TEX.R.APP.P. 50(d). Absent such a record, the reviewing court must presume that the evidence before the trial judge was adequate to support the decision. *Mays v. Pierce,* 154 Tex. 487, 281 S.W.2d 79, 82 (1955). In the instant case, we do not have a record of the proceedings which occurred on June 8, 1990, and we only have copies of exhibits from the hearing on June 26, 1990. Neither is there a record before us of the proceedings which occurred on either September 24 or October 24, 1990. Because a consideration of points of error 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10

requires in each instance a consideration of matters which transpired before the court in one or more of the hearings conducted on June 8, June 26, September 24, and October 24, 1990, we are unable to determine whether there was error in the absence of a statement of facts (or of a complete statement of facts) from each of those separate hearings. Therefore, we must presume there was evidence before the trial court to support the court's order in each instance. Points of error 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 are, accordingly, overruled.

■ With regard to point of error 11, Sutton contends the trial court abused its discretion in sanctioning and rendering default judgment against him. As already noted, the only record before this court is from the hearing on the motion for sanctions to compel discovery. In that hearing, counsel for Sutton admitted his client's refusal to comply with the district court's order for DNA testing. Section 13.02 of the Texas Family Code, as amended effective September 1, 1989, provides in part:

(a) When the respondent appears in a paternity suit, the court shall order the mother, alleged father, and child to submit to the taking of blood, body fluid, or tissue samples for the purpose of scientifically accepted paternity testing. The court shall require in its order testing necessary to ascertain the possibility of the alleged father's paternity and shall require that the tests exclude at least 95 percent of the male population from the possibility of being the father of the child, except that the court shall permit the omission of any further testing if testing has been conducted sufficient to establish that the alleged father is not the father of the child, or if the costs of testing have reached an amount that the court determines to be the greatest amount that may reasonably be borne by one or more parties to the suit. . . .

(b) An order issued under this section is enforceable by contempt, except that:

.    .    .    .    .

(2) if any party refuses to submit to court-ordered paternity testing, upon proof sufficient to render a default judgment the court may resolve the question of paternity against that party.

In addition, section 13.06(d) of the Code provides that "[a] party who refuses to submit to paternity testing has the burden of proving that the alleged father is not the father of the child." We also note that Rule 167a(d)(2) provides in pertinent part that:

(d) In cases arising under Title II, Family Code, on the court's own motion or on the motion of a party, the court may appoint:

.    .    .    .    .

(2) non-physician experts who are qualified in paternity testing to take blood, body fluid or tissue samples and to conduct such tests as ordered by the court.

In *Monaghan v. Crawford*, 763 S.W.2d 955 (Tex.App.—San Antonio 1989, no writ), this court considered a custody modification action in which the party petitioning for modification had refused to submit to court-ordered drug testing. That party's suit was dismissed as a sanction for refusal to submit to the drug-testing. In *Monaghan* we noted that:

The imposition of sanctions in the nature of penalties, as provided in TEX.R.CIV.P. 215, . . . *for the refusal of a party to comply with discovery rules is within the sound discretion of the trial court. The measures imposed by the court will be reversed only if the reviewing court finds that the trial court abused its discretion as a matter of law. Jarrett v. Warhola,* 695 S.W.2d 8, 10 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd).

[The non-compliant party's] refusal to be tested for drugs was deliberate, intentional and willful. By such refusal, it was impossible to determine whether she was using drugs, a material issue in the case. The record does not indicate that the trial court acted in a capricious, arbitrary or unreasonable manner. The sanctions chosen were within the discretion of the trial court as set out in Rule 215.

*Id.* at 959. In a similar vein, Sutton in the instant lawsuit had submitted to giving a blood sample early in the development of the case, then disclaimed the alleged reliability of that blood test claiming it did not take into account that he and Eddy were first cousins. When a more reliable test to determine paternity was authorized by the amendment to section 13.02 of the Family Code, such as the DNA test ordered by the district court, and Sutton was ordered to submit to such a test by the court, he deliberately, intentionally, and willfully refused to be tested to determine his possible paternity. Under the state of the record before this court, we cannot agree with Sutton, in view of the several opportunities he was given to comply with the court order, that the trial court abused its discretion. Accordingly, we overrule Sutton's point of error 11.

Because there is no error requiring reversal in the instant appeal and because each of Sutton's points of error is without merit, we affirm the judgment of the trial court.