**Timothy L. SHARMA, Appellant**

**v.**

**Lisa C. ROUTH, Appellee.**

**No. 14–06–00717–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 8, 2009.

Concurring Opinion on Rehearing Dec. 3, 2009.

Sallee S. Smyth, Richmond, TX, Michael P. Von Blon, Houston, TX, for appellants.

Marshall Davis Brown, Jr., JoAnn Storey, Houston, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices FROST and GUZMAN.

## MAJORITY OPINION ON REHEARING

KEM THOMPSON FROST, Justice.

Appellant Timothy L. Sharma's motion for rehearing is granted. The majority and dissenting opinions issued in this case on December 31, 2008, are withdrawn, and this Majority Opinion on Rehearing is issued today, with a concurring opinion by Chief Justice Hedges to follow.

### I. INTRODUCTION

This is an appeal from a divorce decree in which the husband asserts that the trial court reversibly erred by characterizing income distributions he received from two testamentary trusts as community property and awarding half of those distributions to his wife, rather than awarding all of the distributions to him as his separate property. In the context of a spouse who receives distributions of trust income under an irrevocable trust during marriage, case law indicates that the income distributions are community property if the receiving spouse owns the trust corpus but that the distributions are separate property if the receiving spouse does not own the trust corpus. Neither the Supreme Court of Texas nor this court has decided what the legal standard should be for determining whether the receiving spouse owns the trust corpus. We hold that, when a spouse receives distributions of trust income under an irrevocable trust during marriage, the income distributions are community property only if the recipient has a present possessory right to part of the corpus. The trial evidence conclusively proved that the husband did not have such a right and that the distributions in question were separate property to which the husband acquired title by devise or gift during the marriage. Although we affirm the trial court's grant of divorce and dissolution of the marriage, based on the trial court's reversible error in awarding the wife substantial amounts of the husband's separate property, we sever and reverse the remainder of the judgment and remand for further proceedings.

### II. FACTUAL AND PROCEDURAL BACKGROUND[1]

Appellant Timothy L. Sharma and appellee Lisa C. Routh were married in August 2004.[2] A few months later, Timothy filed for divorce. Soon thereafter, the couple separated and ceased living together as husband and wife. After a lengthy bench trial, in January 2006, the trial court signed a decree ending the parties' brief marriage.

#### Husband's Prior Marriage and Rights to Trust Property

Before his marriage to Lisa, Timothy was married to Alice Hiniker Sharma from 1982 until Alice's death in 2001. Under Alice's will, two trusts were created: the Alice Hiniker Sharma Marital Trust (hereinafter "Marital Trust") and the Alice Hiniker Sharma Family Trust (hereinafter "Family Trust"). Timothy is the trustee of both the Marital Trust and the Family Trust. Alice's will requires that the net

---

1. The record in this case is voluminous and contains evidence regarding many matters; however, we mention only the facts relevant to the disposition of this appeal.

2. The trial court rejected Lisa's assertion of a prior common-law marriage, and no party has challenged this finding on appeal.

income of the Marital Trust be distributed to Timothy at least quarterly. Likewise, under certain circumstances and to a specified extent, the trustee of the Family Trust is required to distribute to Timothy income or principal from the Family Trust.

While married to Alice, Timothy, who is a psychiatrist, built up and developed psychiatric hospitals in the Houston area. In 2002, the Marital Trust was initially funded with two psychiatric hospitals, realty, and shares of common stock in Cambridge International, Inc. ("International"), with a total stated value of more than $39 million. The Family Trust was initially funded only with shares of International common stock.

In 2003, Timothy, as trustee of the Marital Trust, sold the realty and improvements for the two hospitals to a nonprofit organization now known as the Cambridge Health Foundation[3] (hereinafter "Cambridge Foundation") in exchange for a promissory note in the original principal amount of $30,115,000 (hereinafter "Building Note"). As a result of its ownership of International stock, the Marital Trust also received a promissory note in the original principal amount of $3,952,680.10, executed by Intracare Hospital (hereinafter "Intracare Note"). As a result of its ownership of International stock, the Family Trust received a promissory note in the original

principal amount of $739,601.22, executed by Intracare Hospital (hereinafter "Family Trust Note"). Following a complex set of transactions in December 2003, two nonprofit organizations, Intracare Hospital and Intracare North Hospital, began operating the two psychiatric hospitals. The Cambridge Foundation owned the land and buildings for these two hospitals.

The Building Note, the Intracare Note, and the Family Trust Note (hereinafter collectively the "Notes") all provide for periodic payments of principal and interest. The interest portion of the payments on the Building Note and the Intracare Note is income to the Marital Trust, which, under Alice's will, must be distributed to Timothy. The record reflects that Timothy also received distributions of income from the Family Trust. However, at all material times since the execution of the Notes on December 31, 2003, Timothy has donated the income distributions from both trusts to the Cambridge Foundation without taking actual receipt of any money.[4] Timothy reported these distributions as income on his personal income tax return and claimed a charitable deduction for his donation of these distributions. The record contains no evidence that Timothy received distributions of trust corpus from the Marital Trust or the Family Trust.[5]

---

**3.** At the time of the sale, the foundation was known as the Alice and Timothy Sharma Foundation.

**4.** Timothy testified that he donated the income from the trusts to the Cambridge Foundation, and the record contains no evidence that trust income was deposited in any of Timothy's bank accounts.

**5.** Evidence at trial, however, showed that, during the twenty months following the funding of the Marital Trust and the Family Trust, neither of these trusts had its own bank account. During this period the principal portions of payments on the Notes were deposited into one of Timothy's community property

bank accounts by staff hired to assist him. There was testimony that this was done in error because Timothy and his advisors lacked experience in operating trusts, given that Timothy had never before been a trustee. Eventually, a reconciliation was performed by professional staff, and separate accounts were established for both of the trusts. There is no evidence that Timothy, as trustee, ever declared or determined that he was entitled to receive distributions of corpus from the Marital Trust or the Family Trust. The trial court did not find that the depositing of this principal into Timothy's personal bank account constituted distributions of corpus to Timothy. Based in part on the depositing of part of the

## Trial Court Proceedings

After a lengthy bench trial involving extensive testimony and trial exhibits, the trial judge signed an order on January 26, 2006. In this order, the trial court granted the parties a divorce and, among other things, made the following determinations:

- The Marital Trust is Timothy's separate property.
- Because interest received on separate property is community property, the interest on the corpus of the Marital Trust is community property.
- Lisa is entitled to fifty percent of the interest that accrued on the Building Note and the Intracare Note during the marriage—from August 29, 2004 through January 26, 2006.

In the order the trial court did not specifically mention the Family Trust, but it indicated that it also was awarding Lisa half of the interest that accrued on the Family Trust Note during the marriage. This order did not contain all the necessary information for a property division and a final decree. Therefore, further proceedings in the trial court were required. Following these proceedings, Timothy and Lisa agreed that, from the date of their marriage (August 29, 2004) through the date of their divorce (January 26, 2006), $2,096,067 in interest accrued on the Building Note and $175,996 in interest accrued on the Intracare Note. The sum of these two amounts is $2,272,063 (herein-

after collectively "Marital Trust Income"). The parties also agreed that, during the same period, $32,955 in interest accrued on the Family Trust Note (hereinafter "Family Trust Income").

The trial court signed a final decree and then issued findings of fact and conclusions of law. The trial court found that a just and right division of the community estate having due regard for each party's rights would be to award each party fifty percent of the community estate. The trial court determined that the total community estate, including the Marital Trust Income and the Family Trust Income, had a value of $3,872,924.23. The trial court awarded Lisa one-half of this amount to equalize the division of the estate. The trial court rendered judgment in favor of Lisa and against Timothy in the amount of $1,936,462.12, plus interest. In addition, the trial court ordered that this judgment be secured by an equitable lien against all of Timothy's separate property and against Timothy's half of the community estate. The trial court denied all parties' claims for reimbursement or economic contribution.[6]

## III. ISSUES AND ANALYSIS

■ On appeal, Timothy challenges the trial court's property division, asserting, among other things, that the trial court erred by characterizing the Marital Trust

---

trust corpus into Timothy's personal bank account, Lisa sought leave to file a trial amendment asserting that the Marital Trust and the Family Trust should be disregarded because Timothy allegedly had engaged in a pattern of dealing with the trust property as if he owned the property, such that the trusts are Timothy's alter egos. The trial court denied Lisa leave to file this trial amendment. Lisa has not challenged this ruling on appeal. There is no evidence that Timothy received distributions of corpus from the Marital Trust or the Family Trust.

6. Timothy's opening appellate brief contains no argument, analysis, or citations to the record and legal authorities regarding any assertion that the trial court erred in dividing the trust income in question because it was no longer part of the parties' estate, given that Timothy had donated this income back to the maker of the Notes. *See* TEX.R.APP. P. 38.1(i); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

Income, and the Family Trust Income as community property rather than as Timothy's separate property. Timothy asserts that this income is his separate property because he acquired it by devise or gift, and that the trial court erred by awarding half of this income to Lisa.

In a divorce decree, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM.CODE ANN. § 7.001 (Vernon 2006). To convince this court to disturb the trial court's division of property, Timothy must show the trial court clearly abused its discretion by a division or an order that is manifestly unjust and unfair. *See Stavinoha v. Stavinoha,* 126 S.W.3d 604, 607 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Under this standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but they are relevant factors in assessing whether the trial court abused its discretion. *Id.* at 608. If the trial court mischaracterizes a spouse's separate property as community property and awards some of the property to the other spouse, then the trial court abuses its discretion and reversibly errs. *See Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 142 (Tex. 1977); *Gana v. Gana,* No. 14–05–00601–CV, 2007 WL 1191904, at *4 (Tex.App.-Houston [14th Dist.] Apr. 24, 2007, no pet.) (mem. op.).

All property possessed by either spouse during or on dissolution of marriage is presumed to be community property. TEX. FAM.CODE ANN. § 3.003(a) (Vernon 2006). The burden of overcoming this presumption is on the party asserting otherwise, and the standard of proof is by clear and convincing evidence. *Id.* § 3.003(b). "Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex.2002). Whether property is separate or community is determined by its character at the inception of the party's title. *Barnett v. Barnett,* 67 S.W.3d 107, 111 (Tex.2001). Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested. *Smith v. Smith,* 22 S.W.3d 140, 145 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

In the Texas Constitution, the people of Texas have proclaimed:

All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse; and laws shall be passed more clearly defining the rights of the spouses, in relation to separate and community property....

TEX. CONST. art. XVI, § 15. In the Texas Family Code, the legislature restates this definition of "separate property" from the Texas Constitution, and it then states that "community property consists of the property, other than separate property, acquired by either spouse during marriage." *See* TEX. FAM.CODE § 3.002 (Vernon 2006). In interpreting the Texas Constitution, Texas courts rely heavily on the literal text and must give effect to its plain language. *Republican Party of Texas v. Dietz,* 940 S.W.2d 86, 89 (Tex.1997); *Arnold v. Leonard,* 114 Tex. 535, 273 S.W. 799, 801–03 (1925) (stating that a court's duty is to give effect to the will of the people of Texas, as expressed by the plain meaning of the Texas Constitution). Basing its analysis on the plain meaning of the constitutional text, the Supreme Court of Texas has reasoned that, as to property a spouse acquires during marriage, if the

spouse acquires the property by gift, devise, or descent, then the property belongs to the spouse's separate estate, but if the property is acquired in any other manner, then the property belongs to the community estate. *See Arnold,* 273 S.W. at 801–03. Decades ago in *Arnold,* our high court concluded that rents and revenues acquired during marriage based on a spouse's ownership of separate realty were not acquired by gift, devise, or descent and therefore were community property. *See id.* The *Arnold* court held unconstitutional a statute in which the legislature attempted to make such property part of the spouse's separate estate. *See id.* at 803–05. The high court indicated that rents and revenues were acquired at the time they came into existence rather than when a spouse received the property that generated the rents and revenues. *See id.* The *Arnold* case did not involve trust income or a devise or gift of income. *See id.*

***Does the evidence prove, as a matter of law, that the husband acquired the marital trust income by devise or gift so that this income is his separate property?***

Under the unambiguous language of Alice's will, Alice required the trustee of the Marital Trust to distribute the Marital Trust Income to Timothy.[7] A devise is "the act of giving property by will." BLACK'S LAW DICTIONARY 483 (8th ed. 2004). Timothy acquired the Marital Trust Income because in Alice's will she required that it be distributed to him. Under the unambiguous meaning of "acquired ... by ... devise" and under the unambiguous language of Alice's will, Timothy acquired the Marital Trust Income by devise.

Courts have held that distributions from testamentary or inter vivos trusts to married recipients who have no right to the trust corpus are the separate property of the recipient because these distributions are received by gift or devise.[8] *See Cleaver v. Cleaver,* 935 S.W.2d 491, 492–94 (Tex. App.-Tyler 1996, no pet.); *Wilmington Trust Co. v. United States,* 4 Cl.Ct. 6, 14 (1983) (applying Texas law), *aff'd,* 753 F.2d 1055 (Fed.Cir.1985). However, though the *Arnold* case did not involve trust income or a devise or gift of income, the *Arnold* court suggested that, if a spouse owns the property that generates income during the marriage, then the income results from the ownership of the property rather than any gift or devise that may have bestowed the

7. Lisa agrees that this action is required under Alice's will.

8. Courts also have held that, if a potential beneficiary under a trust has no right to acquire corpus or accrued trust income, then that corpus or income cannot possibly be the community property of the potential beneficiary's spouse. *See Lemke v. Lemke,* 929 S.W.2d 662, 663–64 (Tex.App.-Fort Worth 1996, writ denied); *In re Marriage of Burns,* 573 S.W.2d 555, 556–57 (Tex.Civ.App.-Texarkana 1978, writ dism'd); *Currie v. Currie,* 518 S.W.2d 386, 389–90 (Tex.Civ.App.-San Antonio 1974, writ dism'd). Conversely, if a spouse has a present possessory right to trust corpus or income but the spouse elects not to receive it, then courts have treated the spouse as having acquired title to the corpus or income as separate property, with any future

income from that property during marriage being community property. *See Cleaver v. Cleaver,* 935 S.W.2d 491, 492–94 (Tex.App.-Tyler 1996, no pet.) (holding that, because wife had present possessory right to undistributed income from trust, she would be treated as having acquired that income as her separate property and income on the undistributed income was community property); *In re Marriage of Long,* 542 S.W.2d 712, 717–18 (Tex.Civ.App.-Texarkana 1976, no writ) (holding that, because husband had present possessory right to half of trust corpus, that half of the corpus would be treated as the husband's separate property and the accrued income on that half of the corpus would be treated as community property, even though husband had decided to leave that half of the corpus in the trust).

income-generating property on the spouse in the past. *See Arnold,* 273 S.W. at 803–05. Consequently, for the Marital Trust Income to constitute separate property, it appears that Timothy must not have owned the property that generated the income. *See id.* In the context of a distribution of trust income under an irrevocable trust during marriage, there are at least four possible rules that could be adopted:

(a) Income distributions are always community property, even if the recipient has no right to the corpus of the trust, because the recipient's right to receive the income means that the recipient is a trust beneficiary and effectively an owner of the trust corpus (hereinafter "Rule A").[9]

(b) Income distributions are community property only if the recipient has some potential right to the corpus, even if the right has not yet become a possessory right, because the recipient's potential right to access the corpus means that the recipient is effectively an owner of the trust corpus (hereinafter "Rule B").

(c) Income distributions are community property only if the recipient has a present possessory right to part of the corpus, even if the recipient has chosen not to exercise that right, because the recipient's possessory right to access the corpus means that the recipient is effectively an owner of the trust corpus (hereinafter "Rule C").[10]

(d) Income distributions are community property only if the recipient has exercised a possessory right to part of the corpus, because the recipient's exercise of this possessory right means that the recipient is effectively an owner of the trust corpus (hereinafter "Rule D").[11]

Because there are no decisions by the Supreme Court of Texas or this court that specifically address this issue, we must determine which rule to apply.[12]

Texas courts have addressed similar issues using a variety of approaches. In *Ridgell v. Ridgell,* the court addressed the characterization of mandatory income distributions to the wife from two testamentary trusts. *See* 960 S.W.2d 144, 147–50 (Tex.App.-Corpus Christi 1997, no pet.).

**9.** Although no case supports this rule, parts of Lisa's argument suggest it.

**10.** *See McClelland v. McClelland,* 37 S.W. 350, 358–59 (Tex.Civ.App.1896, writ ref'd).

**11.** The *Cleaver* court addresses this rule. *See Cleaver,* 935 S.W.2d at 492–94.

**12.** The *Arnold* case does not address this issue. *See Arnold,* 273 S.W. at 801–05. Timothy cites *Hutchison v. Mitchell,* 39 Tex. 487 (1873) (holding that income from trust received by wife was her separate property in situation in which wife was income beneficiary). The *Hutchison* case was decided by the so-called "Semicolon Court" that sat from 1870–73, during the end of the Reconstruction Era. James R. Norvell, *Oran M. Roberts and the Semicolon Court,* 377 Tex. L.Rev. 279, 279–87 (1959). Lisa asserts that cases from this court have no precedential value, citing *Peck v. City of San Antonio,* 51 Tex. 490, 1879 WL 7699 (1879). However, the *Peck* court held that decisions from the so-called "Military Court" (the Supreme Court of Texas from 1867 to 1869, the members of which were appointed without constitutional basis by military authorities under Congressional Reconstruction) have no precedential value, while decisions from the Semicolon Court do have precedential value because that court had authority under the Texas Constitution of 1869. *See Peck,* 51 Tex. at 492–93, 1879 WL 7699, at *1–2; *see also* Norvell, 377 Tex. L.Rev. at 287–96. In any event, though the *Hutchison* case is inconsistent with Rule A, it does not affirmatively address which rule applies. Therefore, the *Hutchison* case does not aid this court in determining the legal rule in this case.

The *Ridgell* court stated that trust income received by a married beneficiary is community property if the receiving spouse "is entitled, or becomes entitled" to distributions of trust corpus. *Id.* at 148. In *Ridgell*, the wife received mandatory distributions of trust income, and, in addition, the testamentary trusts mandated that the trustee make annual distributions of trust corpus to the wife during the first eleven years of the marriage. *See id.* at 146–50. As to the trusts in question, the wife either had received mandatory distributions of corpus or had a present possessory right to receive mandatory distributions of corpus. *See id.* at 147–50. The *Ridgell* court held that the income distributions from the two testamentary trusts to the wife were community property, using an analysis that supports Rule C. *See id.*

In *McClelland v. McClelland*, the husband was a beneficiary under his father's testamentary trust. 37 S.W. 350, 354–56 (Tex.Civ.App.1896, writ ref'd). Upon the husband's death, the trust would end and the assets would be distributed to the father's heirs at law. Though he had no interest in the remainder of the trust, the husband was entitled to a mandatory monthly distribution of $100 while he was unmarried and $150 while he was married. *See id.* In addition, if the trustee determined that the husband was "provident and careful," then the trustee had discretion to make additional distributions to the husband. *See id.* at 356. The trustee did not make any discretionary distributions to the husband, but the trustee did make the monthly distributions of $150 during marriage. *See id.* at 357. In *McClelland,* the trial court granted the wife a divorce from the husband and ruled that, as a matter of law, all trust income that had accrued during marriage was community property. *See id.* at 358. The court of appeals concluded that (1) this income was separate property as a matter of law, and (2) except as to the monthly distributions, the husband had no possessory right to access the income on the trust corpus and therefore, the husband had not acquired this property during marriage. *See id.* at 358–59. As to the monthly distributions that the husband acquired during marriage, the court of appeals concluded that these distributions were the husband's separate property because he acquired them by devise.[13] *See id.* The *McClelland* case supports Rule C and is contrary to Rule A and Rule B.[14]

Various other courts of appeals have indicated disapproval of Rule D and have concluded that, if a spouse has a present possessory right to trust corpus or income but the spouse elects not to receive it, then that spouse should be treated as having acquired title to the corpus or income as separate property to the extent the spouse is entitled to receive it. *See Cleaver,* 935 S.W.2d at 492–94; *In re Marriage of Long,* 542 S.W.2d 712, 717–18 (Tex.Civ.

13. Lisa cites *Buckler v. Buckler,* for the proposition that the Supreme Court of Texas overruled this part of the *McClelland* holding in the *Arnold* case. *See* 424 S.W.2d 514, 516 (Tex.Civ.App.-Fort Worth 1967, writ dism'd). Though the *Buckler* court quoted the *Buckler* appellant's argument that *Arnold* overruled this part of *McClelland,* the *Buckler* court held that *Arnold* did not overrule this part of *McClelland. See id.* In any event, a review of the *Arnold* case shows that the *Arnold* court did not overrule any part of *McClelland* rele- vant to the analysis in the case at hand. *See Arnold,* 273 S.W. at 801–05.

14. The court of appeals in *Shepflin v. Small* concluded that trust income was a spouse's separate property; however, in the opinion the court did not detail the rights of the spouse, if any, to access the corpus of the trust, so that case is not helpful to the inquiry at hand. *See* 4 Tex.Civ.App. 493, 23 S.W. 432, 432–33 (1893, no writ).

App.-Texarkana 1976, no writ). We agree with these courts and reject Rule D.

■ Upon consideration of the plain meaning of article XVI, section 15 of the Texas Constitution ("Section 15") and of the applicable sections of the Family Code, as well as the cases discussed above, we adopt Rule C.[15] We conclude that, in the context of a distribution of trust income under an irrevocable trust during marriage, income distributions are community property only if the recipient has a present possessory right to part of the corpus, even if the recipient has chosen not to exercise that right, because the recipient's possessory right to access the corpus means that the recipient is effectively an owner of the trust corpus.[16]

The unambiguous language of Alice's will and the trial evidence prove the following as a matter of law:

- The Marital Trust is an irrevocable, testamentary trust.
- The trustee of the Marital Trust must distribute the income on the corpus of the Marital Trust to Timothy, at least quarterly.
- Under Alice's will, Timothy has no interest in the remainder of the Marital Trust, which expires upon his death.[17]
- The only potential right that Timothy has to access the corpus of the Marital Trust is the will's requirement that the trustee of the Marital Trust "distribute such amounts of trust principal to [Timothy] as are necessary, when added to the funds reasonably available to [Timothy] from all other sources known to [the trustee] (excluding the Article VI trust property), to provide for [Timothy's] health, support and maintenance in order to maintain him, to the extent reasonably possible, in accordance with the standard of living to which [Timothy] is accustomed at the time of [Alice's] death" (hereinafter "Support Provision").
- At the time the trial court granted divorce on January 26, 2006, Timothy had not received any distributions of

**15.** Lisa cites obiter dicta from a case involving the characterization of income generated by patents. *See Alsenz v. Alsenz,* 101 S.W.3d 648, 653 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). The general obiter dicta statements in *Alsenz* are not on point in answering the issues in this appeal. *See id.* at 653.

**16.** By adopting precise standards, courts promote consistency, uniformity, fairness, and predictability in our jurisprudence. *See* J. Thomas Oldham, *Tracing, Commingling, and Transmutation,* 23 FAM. L.Q. 219, 250 (1989) (noting that legal rules clearly distinguishing community property from separate property increase predictability and uniformity).

**17.** Lisa asserts that the record contains disputed evidence as to whether Timothy or the Timothy and Alice Sharma Foundation is entitled to the remainder of the Marital Trust, in light of an unaudited statement of Timothy's financial condition and testimony of Deo Shanker, who prepared the statement. How-

ever, as a matter of law, this parol evidence cannot be used to create an ambiguity or vary the terms of Alice's unambiguous will. *See Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951) (holding that Texas courts must enforce an unambiguous written instrument as written and parol evidence will not be received for the purpose of creating an ambiguity or varying the meaning of the instrument); *Fein v. R.P.H., Inc.,* 68 S.W.3d 260, 265–66 (Tex. App.-Houston [14th Dist.] 2002, pet. denied) (same); *see also Appling v. Jay,* 390 S.W.2d 799, 803 (Tex.Civ.App.-Texarkana 1965, writ ref'd n.r.e.) (rejecting effort by one party interested in a trust to modify a term of the trust by unilateral interpretation of the trust instrument that clashes with its specific language). Therefore, any conflict or dispute created by this parol evidence is of no moment, and, under the unambiguous language of the will, the Timothy and Alice Sharma Foundation is the sole remainder beneficiary of the Marital Trust.

any part of the corpus of the Marital Trust.

- At no time during his marriage to Lisa did Timothy have a present possessory right to any part of the corpus of the Marital Trust.

Under the unambiguous meaning of Section 15 and of Alice's will, Timothy acquired the Marital Trust Income by devise or gift.[18] *See Arnold,* 273 S.W. at 801–03; *McClelland,* 37 S.W. at 358–59; BLACK'S LAW DICTIONARY 483 (8th ed. 2004). Based on the unambiguous language of Alice's will, Timothy would have a present possessory right to receive distributions of corpus only if he, as trustee of the Marital Trust, determined that such distributions were necessary for his maintenance under the Support Provision. The record contains no evidence that Timothy ever made such a determination or that he ever was entitled to receive distributions of trust corpus from the Marital Trust. Because Timothy had no present, possessory right to any part of the Marital Trust corpus, Timothy was not effectively an owner of

the trust corpus during his marriage to Lisa, and the Marital Trust Income, as a matter of law, is not community property.[19] *See McClelland,* 37 S.W. at 358–59.

Lisa argues that, if an income beneficiary is also the trustee, then, because the trustee holds legal title and right to control the trust corpus, the trustee/beneficiary must be deemed the owner of the trust corpus for purposes of characterizing the trust income. Lisa cites language from the *Wilmington Trust Co.* case, in which the court states that the income beneficiary was not the trustee and therefore lacked the right to possess and control the trust corpus. *See Wilmington Trust Co.,* 4 Cl.Ct. at 14. The *Wilmington Trust Co.* court noted that the income beneficiary was not the trustee; however, the court, in concluding that the income distributions were separate property, also noted and strongly emphasized that the income beneficiary had no right to access the trust corpus. *See id.* at 8–14. The *Wilmington Trust Co.* court did not need to decide whether an income beneficiary's service as trustee would be a controlling factor in the

18. Lisa asserts that Timothy could not possibly have acquired the trust income by devise because Timothy acquired it during marriage and after Alice's death. Lisa cites no case in this regard; however, all devises occur after the death of the person making the devise. In addition, the passage of time following Alice's death does not change the fact that the only reason that trust income was distributed to Timothy was because of the commands of Alice in her will. *See McClelland,* 37 S.W. at 358–59 (stating that monthly income distribution was acquired by devise). In any event, Timothy's acquisition of the Marital Trust Income also satisfies the essential elements of a gift. *See Hilley v. Hilley,* 161 Tex. 569, 342 S.W.2d 565, 569 (1961) (stating a gift is a transfer of property made voluntarily and gratuitously); *Cleaver,* 935 S.W.2d at 493 (concluding that wife's acquisition of income from testamentary trust was either by gift or devise). Because Timothy acquired the income in question by devise or gift during marriage, this court's holding is based on the plain

meaning of the definition of separate property in the Texas Constitution. This court does not go beyond the definition of separate property in the Texas Constitution.

19. Lisa cites an obiter dictum from the *Ridgell* case that the beneficiaries of a valid trust are the owners of the equitable title to the trust property and are considered the "real owners." *See Ridgell,* 960 S.W.2d at 147. Though the court, in making this general statement, does correctly contrast the bare legal title held by the trustee with the equitable title of beneficiaries, it does not distinguish between remainder beneficiaries and income beneficiaries who do not have a present possessory interest in the trust corpus. We conclude that this distinction is significant in the marital-property characterization under Section 15 and the *Arnold* case. In addition, as discussed above, the *Ridgell* court's marital-property-characterization analysis supports Rule C. *See id.* at 147–50.

marital-property characterization of the trust income.[20]

In her trial court pleadings, Lisa did not allege, and Lisa does not assert on appeal, that the trusts were created, funded, or operated in fraud of her rights, nor has she pleaded that the trusts should be disregarded or that the trusts are Timothy's alter egos.[21] *See Lemke v. Lemke,* 929 S.W.2d 662, 664 (Tex.App.-Fort Worth 1996, writ denied). Timothy may serve as trustee even though he is one of the beneficiaries under the trusts. *See* Tex. Prop. Code Ann. § 112.008(b) (Vernon 2006). However, Timothy, as trustee of the trusts, holds bare legal title and the right to possession of trust assets. *Burns v. Miller, Hiersche, Martens & Hayward, P.C.,* 948 S.W.2d 317, 322 (Tex.App.-Dallas 1997, writ denied). Therefore, the fact that an income beneficiary also holds legal title to the corpus in his capacity as trustee should not be a controlling factor in the marital-property characterization of the trust income.[22]

For the foregoing reasons, the trial court reversibly erred in characterizing the Marital Trust Income as community property rather than Timothy's separate property and by awarding part of this property to Lisa.[23] *See Eggemeyer,* 554

---

20. Lisa also relies on *Mercantile National Bank at Dallas v. Wilson,* 279 S.W.2d 650, 651–54 (Tex.Civ.App.-Dallas 1955, writ ref'd n.r.e.). However, that case is not on point. Because the trust in *Wilson* was an inter vivos trust, there was no possibility of a devise. *See Wilson,* 279 S.W.2d at 651–54. Furthermore, because the wife was the sole settlor and sole beneficiary of the trust, there was no possibility that she could receive a gift, because she could not make a gift to herself.

21. As noted above, Lisa requested leave to file a trial amendment pleading alter ego, but the trial court denied leave. Lisa has not challenged that ruling in this appeal. Thus, there are no pleadings to support any alter ego theory.

22. Lisa asserts that Timothy's trial counsel agreed in his opening statement that the trust corpus is Timothy's separate property. However, in the cited passage, Timothy's counsel first stated that there would be evidence that Timothy's permanent possessory interest in the trust is only in the interest income, not in the corpus. Counsel then stated that the trust itself owns the corpus and that Lisa is trying to obtain "monies that were generated from that trust, which is [Timothy's] separate property." In context, it is apparent that the latter clause modifies "monies" rather than "trust" and that Timothy's counsel was saying that the trust income was Timothy's separate property. Timothy's counsel had just asserted that Timothy did not have a possessory interest in the trust corpus. In addition, in a subsequent discussion between trial counsel and the trial court regarding Timothy's alleged failure to produce documents in response to Lisa's discovery requests, Timothy's counsel first asserted that the trust owned the trust corpus such that the corpus was not Timothy's separate property. Lisa's counsel then stated that Timothy claimed the Marital Trust Income was his separate property. Timothy's counsel then made a statement indicating that the Marital Trust Income is community property. In any event, the statements of Timothy's trial counsel in these two instances certainly were not a clear, deliberate, and unequivocal statement that the trust corpus is Timothy's separate property or that the trust income is community property. Therefore, these statements of counsel do not constitute judicial admissions. *See Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.,* 936 S.W.2d 275, 278 (Tex.1996) (holding that statement was not clear, deliberate, and unequivocal so as to constitute a judicial admission).

23. Though Timothy raises numerous issues and arguments on appeal, including the "constructive receipt" argument, he also asserts that the Marital Trust Income and the Family Trust Income are his separate property because he acquired them by devise or gift. Timothy conditions his "constructive receipt" argument and his fifth issue on this court's determining that the trial court correctly characterized the Marital Trust Income and the Family Trust Income as community property. Because the trial court did not correctly characterize the income, this court *does not*

S.W.2d at 142; *Gana,* 2007 WL 1191904, at *4.

***Does the evidence prove, as a matter of law, that the husband acquired the family trust income by devise or gift so that this income is his separate property?***

The trial evidence shows that Timothy also received distributions of income from the Family Trust. These distributions were significantly smaller than the income distributions from the Marital Trust. The record contains no evidence that trust corpus was distributed.[24] The trial court concluded that $32,955 in community property was attributable to income from the Family Trust Note. Timothy asserts that the trial court erred as matter of law and should have characterized this income as his separate property. The unambiguous language of Alice's will and the trial evidence prove the following as a matter of law:

- The Family Trust is an irrevocable, testamentary trust.
- Under Alice's will, Timothy has no interest in the remainder of the Family Trust, which expires upon his death.[25]
- The only potential right that Timothy has to access the corpus of the Marital Trust is the will's requirement that the trustee of the Family Trust distribute such amounts of income and principal as shall be necessary for Timothy's support and maintenance as determined by a standard substantially similar to the Support Provision of the Marital Trust.[26]

- At the time the trial court granted Timothy and Lisa a divorce on January 26, 2006, Timothy had not received any distributions of any part of the corpus of the Family Trust.
- At no time during his marriage to Lisa did Timothy have a present possessory right to any part of the corpus of the Family Trust.

Under the unambiguous meaning of Section 15 and of Alice's will, Timothy acquired the Family Trust Income by devise or gift. *See Hilley v. Hilley,* 161 Tex. 569, 342 S.W.2d 565, 569 (1961) (stating a gift is a transfer of property made voluntarily and gratuitously); *Arnold,* 273 S.W. at 801–03; *Cleaver,* 935 S.W.2d at 493 (concluding that wife's acquisition of income from testamentary trust was either by gift or devise); *McClelland,* 37 S.W. at 358–59; BLACK'S LAW DICTIONARY 483 (8th ed. 2004). In addition, because Timothy had no present, possessory right to any part of the Family Trust corpus, Timothy was not ef-

---

address Timothy's "constructive receipt" argument and his fifth issue. Timothy's "constructive receipt" argument has nothing to do with the depositing of trust corpus into Timothy's personal bank account by Timothy's staff in error. Rather, in the "constructive receipt" argument, Timothy asserts that, because he donated distributions of trust income to the Cambridge Foundation without taking actual receipt of any money, Timothy never acquired this income and therefore this income is not separate or community property.

**24.** *See supra,* note 5.

**25.** Lisa suggests that the evidence is unclear as to whether there are beneficiaries of the Family Trust other than Timothy based on an

unaudited statement of Timothy's financial condition stating that Timothy is the sole beneficiary of the Family Trust. Lisa also cites testimony from a witness who stated that Timothy is the sole beneficiary of the Family Trust and that there is no remainder beneficiary under "that will." However, as previously noted, a financial statement prepared at Timothy's request and the legal opinion of a nonlawyer witness, as a matter of law, cannot change the terms of Alice's will. *See Appling,* 390 S.W.2d at 803.

**26.** The issue of whether, under the Support Provision of the Family Trust, it was in fact necessary to distribute the Family Trust Income to Timothy is not before us, and we do not address this issue.

fectively an owner of the trust corpus during his marriage to Lisa, and the Family Trust Income, as a matter of law, was not community property. *See McClelland*, 37 S.W. at 358–59.

Therefore, the trial court reversibly erred in characterizing the Family Trust Income as community property rather than Timothy's separate property and by awarding any part of this property to Lisa. *See Eggemeyer*, 554 S.W.2d at 142; *Gana*, 2007 WL 1191904, at *4. This error requires a reversal and remand to the trial court.

## IV. Conclusion

Under the plain meaning of Section 15 and of the applicable sections of the Family Code, we conclude that, in the context of income distributions under an irrevocable trust during marriage, these distributions are community property only if the recipient has a present possessory right to part of the corpus, even if the recipient has chosen not to exercise that right. Under these circumstances, the recipient's possessory right to access the corpus means that the recipient is effectively an owner of the trust corpus. Under this standard, the trial court erred in characterizing the Marital Trust Income and the Family Trust Income as community property, and Timothy acquired this property by devise or gift rather than by the receipt of income on property he owned. The trial court erred by awarding Lisa any part of this income, the principal amount of which totals $2,305,018. Although we affirm the trial court's grant of divorce and dissolution of the marriage, based on the trial court's reversible error in mischaracterizing the Marital Trust Income and the Family Trust Income, we sever the re-

mainder of the judgment and reverse and remand for further proceedings in conformity with this opinion.[27]

HEDGES, C.J., concurring.

ADELE HEDGES, Chief Justice, concurring on rehearing.

In seven issues, appellant, Timothy L. Sharma, challenges the trial court's characterization of income from two testamentary trusts created by Sharma's first wife, Alice Hiniker Sharma, the division of the marital estate, the reliability of expert testimony, and the trial court's refusal to file additional findings of fact and conclusions of law. Because the trial court mischaracterized a portion of the marital property, namely the trust income from Alice's testamentary trusts, the majority correctly reverses and remands this case. Although I agree with the majority's disposition, I would reverse and remand for different reasons. I therefore concur in the judgment only and write separately to explain my reasons.

## I. FACTUAL BACKGROUND

Sharma and appellee, Lisa C. Routh, were married on August 29, 2004. The couple separated months later, and their marriage was dissolved on January 26, 2006. In the final decree of divorce, the trial court characterized certain trust income as community property. The trust at issue had been created by Alice, Sharma's first wife. In her last will and testament, Alice created two trusts, the Marital Deduction Trust ("Marital Trust") and the Family Trust.

### A. The Marital Trust

Under the Marital Trust, Sharma is the trustee and beneficiary; Upward Reach

---

**27.** Because we have granted this relief, we need not and do not address the other issues

Timothy raises on appeal.

Foundation, a charity created by Alice and Sharma, is named as the remainder beneficiary.[1] The Marital Trust provides for mandatory distributions of trust income to the beneficiary. The trust also provides for distributions from "trust principal ... as are necessary ... to provide for [Sharma's] health, support, and maintenance in order to maintain him ... in accordance with the standard of living to which [he] is accustomed...." At the time of Alice's death in July 2001, the Marital Trust owned two buildings housing psychiatric hospitals in Houston. The hospitals' services and other assets were owned by Cambridge International, Inc. and North Houston Enterprises, Inc. (companies owned by Alice and Sharma). In 2002, additional corpus was transferred into the Marital Trust. Specifically, the following pieces of corpus were added: (1) 6798 shares of common stock in Cambridge International; (2) an 86.25% interest in real estate located on Lake Houston (the "Lake Houston Property"); and (3) an 83.08% interest in real estate located on Earle Street in the Houston area (the "Earle Street Property").

### B. The Family Trust

The Family Trust also names Sharma as the trustee and beneficiary; the remainder beneficiary is Upward Reach Foundation. The Family Trust provides for distributions from trust income and principal as necessary "to provide for [Sharma's] health, support and maintenance in order to maintain him ... in accordance with the

standard of living to which [he] is accustomed...." The Family Trust's corpus initially consisted of 1272 shares of common stock in Cambridge International.

### C. Sale of Corpus in the Marital Trust

In early 2003, Sharma and his financial advisors created a plan to convert the two for-profit psychiatric hospitals into tax exempt hospitals, requiring that the hospitals be sold to a tax exempt entity. The two psychiatric hospitals were renamed Intracare and Intracare North. Sharma then created the Cambridge Health Foundation, the 501(c)(3) corporation for the purpose of acquiring the two hospitals.[2] Sharma serves on the board of trustees for Cambridge Health Foundation.

In December 2003, Sharma, acting as trustee to the Marital Trust, conveyed Intracare and Intracare North to Cambridge Health Foundation. The sale was financed by five promissory notes: one note was made payable to the Marital Trust, another to North Houston Enterprises, and three notes to Cambridge International. The first note was made payable to the Marital Trust for the real property on which the buildings were located (referred to hereinafter as the "MT building note"). The MT building note was in the amount of $30,115,000.00 and became corpus of the Marital Trust.

The second note was made payable to North Houston Enterprises in the amount of $1,127,494.00 for its ownership interest in Intracare North (the "Houston Enter-

---

1. Routh disputes whether the Marital Trust has a remainder beneficiary. On voir dire, Deo Shanker, Sharma's nephew and financial advisor, testified that Sharma was the sole beneficiary of the Marital Trust. Additionally, at the time of trial, Upward Reach Foundation had ceased to exist and had been renamed the Timothy and Alice Sharma Foundation.

2. The 501(c)(3) corporation was originally named the Alice and Timothy Sharma Foundation and was thereafter changed to Cambridge Health Foundation. The former Alice and Timothy Sharma Foundation is a separate entity from the Timothy and Alice Sharma Foundation, which is the newly named remainder beneficiary.

prises note").[3] The three remaining notes, totaling $5,814,475.00, were made payable to Cambridge International and were divided between the three co-owners of Cambridge International. A note in the amount of $3,952,680.10 was transferred to the Marital Trust (the "MT asset note"), which owned 6798 shares of Cambridge International common stock. A note in the amount of $1,122,193.68 was made payable to Cambridge International but was not transferred to the Marital Trust; instead, this note was subsequently transferred to Sharma for his ownership interest in Cambridge International. A note in the amount of $739,601.22 was transferred to the Family Trust (the "FT note"), which owned 1272 shares of common stock in Cambridge International. Subsequently, the principal and accrued interest on these notes were generally transferred to Sharma's personal account.

### D. Divorce Proceedings

Shortly after the parties' separation in 2004, Sharma filed an original petition for dissolution of the marriage. He initially obtained a default judgment against Routh. After Routh successfully moved for a new trial, the trial court set aside the first decree. A trial on the merits commenced on October 10, 2005 and continued thereafter for 13 days. One of the primary issues at trial was the proper characterization and division of the interest accrued during the marriage on the Marital and Family trusts. At the time, the Marital Trust owned the MT building and MT asset notes.[4] The Family Trust owned the

FT note. Both parties admitted and relied on expert testimony regarding the proper characterization of the trust interest income from the Marital and Family trusts.

On May 24, 2006, the trial court signed the final decree of divorce, dissolving the marriage. The trial court also characterized the accrued interest on the MT building note, the MT asset note, and the FT note as community property. In its findings of fact and conclusions of law, the trial court specified the amount of interest accrued on the notes during the marriage. The MT building note had accrued $2,096,067.00 in interest, while the MT asset note had accrued $175,996.00. The Houston Enterprises note had accrued $50,146.00 in interest during the marriage, and the FT note had accrued $32,955.00. The trial court found the interest accrued during the marriage was community property and awarded Routh 50% thereof.

### E. Issues on Appeal

Sharma raises seven issues on appeal. In issues one through four, Sharma challenges the trial court's characterization of the trust income as community property.[5] First, he contends that the trust income is his separate property on the basis that because he is not a named remainder beneficiary, he is not entitled to receive trust principal. Second, Sharma argues that the "income from separate property is community property" rule is not controlling in this case because he did not own the property giving rise to the income. Third, Sharma claims that the interest is his separate property because he acquired it by

---

3. Sharma contends that because he individually owned North Houston Enterprises, this note was not subsequently transferred to either trust.

4. Prior to trial, the Lake Houston Property and most of the Earle Street Property, both part of the corpus in the Marital Trust were

sold. The proceeds from the sales were deposited into Sharma's personal account.

5. On review, Sharma disputes only the characterization of the interest accrued during the marriage on the MT building, MT assets, and FT notes totaling $2,305,018.00.

gift or devise. Fourth, Sharma argues that the trial court's mischaracterization of the trust income constitutes reversible error. In his fifth issue, Sharma claims that the trial court erred by including the trust income as part of the marital estate absent a favorable finding on Routh's claims for reimbursement or fraud. In his sixth issue, Sharma contends that the testimony of Routh's expert, Jeannie McClure, was not reliable with respect to the proper characterization of the trust income. Lastly, Sharma alleges that the trial court erred in refusing to file additional findings of fact and conclusions of law after it made its initial findings.

## II. STANDARD OF REVIEW

We review the trial court's characterization of property under an abuse-of-discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex.1981); *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607–08 (Tex.App.-Houston [14th Dist.] 2004, no pet.). The issue of whether property is separate or community is determined by the facts that, according to rules of law, give character to the property. *Raymond v. Raymond*, 190 S.W.3d 77, 80 (Tex.App.-Houston [1st Dist.] 2005, no pet.). We may reverse the trial court only if, after reviewing the record, it is clear that the trial court's decision is an abuse of discretion or is manifestly unjust and unfair. *Stavinoha*, 126 S.W.3d at 607–08; *see also Sutton v. Eddy*, 828 S.W.2d 56, 58 (Tex.App.-San Antonio 1991, no writ) (stating that the record must affirmatively show that the trial court's decision is arbitrary and unreasonable).

Under this abuse-of-discretion standard, the legal and factual sufficiency of the evidence are not independent grounds for error, but are merely relevant factors in assessing whether an abuse of discretion has occurred. *Stavinoha*, 126 S.W.3d at 608. When a court mischaracterizes separate property as community property, the error requires reversal because the subsequent division divests a spouse of his or her separate property. *Smith v. Smith*, 22 S.W.3d 140, 147 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *McElwee v. McElwee*, 911 S.W.2d 182, 189 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

## III. CHARACTERIZATION OF TRUST INCOME

In Sharma's first four issues, he contends that the trial court abused its discretion by improperly characterizing the trust income as community property. According to Sharma, the trust income is his separate property because he had no interest in the trust corpus, and he acquired the interest by gift or devise.

### A. Definition of Separate and Community Property

In Texas, all marital property is either separate or community property. Separate property is defined by the Texas Constitution as property acquired before marriage or during marriage by gift, devise, or descent. Tex. Const. art. XVI, § 15. Community property consists of property, other than separate property, acquired by either spouse during marriage. Tex. Fam. Code § 3.002; *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex.2001). There is a statutory presumption that all property possessed by either spouse during or on dissolution of marriage is community property. Tex. Fam.Code § 3.003(a); *Barnett*, 67 S.W.3d at 111. To overcome this statutory presumption, a spouse claiming assets as separate property is required to establish his separate character by clear and convincing evidence. Tex. Fam.Code § 3.003(b); *Stavinoha*, 126 S.W.3d at 607. "Clear and convincing" evidence means the measure or degree of proof that will pro-

duce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam.Code § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex.2002).

### B. Characterization of Trust Income

The property in question is trust income in the form of interest payments from the MT building, MT asset, and FT notes. Courts have articulated the following rule: if a married beneficiary has an interest in trust principal and receives income from the principal, the income is characterized as community property. *Ridgell v. Ridgell*, 960 S.W.2d 144, 148 (Tex.App.-Corpus Christi 1997, no pet.) (holding that trust income is community property where the spouse beneficiary maintains an interest in trust corpus); *In re Marriage of Long*, 542 S.W.2d 712, 718 (Tex.Civ.App.-Texarkana 1976, no writ) (concluding that income received on trust corpus is community property if married beneficiary is entitled to corpus); *Mercantile Nat'l Bank at Dallas v. Wilson*, 279 S.W.2d 650, 654 (Tex.Civ. App.-Dallas 1955, writ ref'd n.r.e.) (holding that income on trust corpus during the marriage is community property where spouse has interest in corpus); *c.f. Cleaver v. Cleaver*, 935 S.W.2d 491, 493–94 (Tex. App.-Tyler 1996, no writ) (holding that trust income is separate property only where trust prohibits distributions from corpus). Thus, if the record reveals that Sharma (1) has an interest in the corpus and (2) received trust income, the interest is community property. *See Ridgell*, 960 S.W.2d at 148; *Long*, 542 S.W.2d at 718; *Wilson*, 279 S.W.2d at 654.

#### Interest in Trust Corpus

The trust corpus consisted of the promissory notes payable to the Marital Trust and the Family Trust. Thus, the respective principal payments on the notes became part of trust corpus. As trust corpus, these principal payments should have been deposited into trust accounts. Instead, as Sharma's former CPA, Elizabeth Bunk, and bookkeeper, Valinda Allen, testified, all principal and interest payments made to the Marital and Family trusts were directly deposited into Sharma's personal account, not separate trust accounts, until April 2005. It was improper for Sharma to deposit trust corpus into his separate personal bank account. *See Eaton v. Husted*, 141 Tex. 349, 357, 172 S.W.2d 493, 498 (1943) (reasoning that a trustee must not mingle trust funds with his own). Additionally, a financial statement introduced at trial reflected that Sharma was due to receive principal payments on particular notes. Any receipt of principal payments by Sharma, without meeting the invasion requirements set forth by the trust settlor, would constitute an improper invasion of corpus.

The settlor to the two testamentary trusts authorized invasion of corpus only "as ... necessary ... to provide for [Sharma's] health, support, and maintenance in order to maintain him ... in accordance with the standard of living to which [he] is accustomed...." Without any evidence before us showing that a corpus distribution was necessary or made for Sharma's health, support, or maintenance, we conclude that Sharma did not meet the invasion criteria as set forth in the trust and was not entitled to trust corpus. Accordingly, principal payments made to the trusts could not *properly* be distributed to Sharma. *See Beaty v. Bales*, 677 S.W.2d 750, 754 (Tex.App.-Austin 1984, writ ref'd n.r.e.) (with the exception of statutorily authorized powers, a trustee can exercise only those powers expressly granted by the settlor); *see also* Tex. Prop.Code

§§ 113.029(a) [6], 113.051. Although Sharma improperly took personal possession of the funds, such physical possession without a showing of need did not give Sharma a right to the principal payments or other trust corpus. *See Cleaver,* 935 S.W.2d at 493–94 (spouse beneficiary had no interest in corpus because she had no right or authority to invade the corpus). As such, the principal payments remained trust property. *See Kennedy v. Baker,* 59 Tex. 150 (1883) (wrongful possession or conversion of trust property does not divest the trust's ownership of such property); *Eaton,* 141 Tex. at 357–59, 172 S.W.2d at 498–99 (trust funds improperly commingled with trustee's own funds stay with the trust).

Because the principal payments remained trust property, Sharma had no interest in the corpus. *See Cleaver,* 935 S.W.2d at 493–94. Accordingly, the trust income arising from trust corpus, namely the interest payments, were not community property. *See Ridgell,* 960 S.W.2d at 148 (holding that trust income is community property only where the spouse beneficiary maintains an interest in trust corpus); *In re Marriage of Long,* 542 S.W.2d at 718 (concluding that income received on trust corpus is community property only if married beneficiary is entitled to corpus); *Wilson,* 279 S.W.2d at 654 (holding that income on trust corpus during the marriage is community property where spouse has interest in corpus). Therefore, appellant's second issue should be sustained.[7]

## IV. CONCLUSION

The decree of divorce erroneously found that the trust income was community property, subject to division. Because the characterization, award, and division of the trust income impacted the trial court's "just and right" division of the marital estate, the majority properly reverses the lower court's judgment and remands this cause for further proceedings.

---

**6.** During the 2009 legislative session, the Texas Legislature enacted S.B. No. 666 regarding the administration of charitable trusts. *See* Act of May 27, 2009, 81st Leg., R.S., ch. 754, § 1, 2009 Tex. Sess. Law Serv. 1904, 1904 (Vernon) (to be codified at Tex. Prop.Code § 113.029). In the same legislative session, H.B. No. 2368 regarding the discretionary powers of a trustee was enacted. *See* Act of May 26, 2009, 81st Leg., R.S., ch. 672, § 3, 2009 Tex. Sess. Law Serv. 1495, 1495 (Vernon) (to be codified at Tex. Prop.Code § 113.029). Both S.B. No. 666 and H.B. No. 2368 were ultimately codified under the same section number of the Property Code,

113.029. We refer to H.B. No. 2368's version of section 113.029(a), titled "Discretionary Powers; Tax Savings." *See id.*

**7.** Having sustained appellant's second issue, I do not reach the remaining issues asserting alternate grounds for characterizing the trust income as community property and issues regarding the reliability of expert testimony and findings of fact and conclusions of law. *See* Tex.R.App. P. 47.1 (appellate court's opinion must address every issue "necessary to final disposition of the appeal").